JS-6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO SCHILLER, on behalf of himself and all other similarly-situated employees,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY DISTRIBUTION SERVICES, LTD.; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No. 5:20-cv-02662-JWH-(KKx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF No. 11]** |

Before the Court is the Motion of Plaintiff Francisco Schiller to remand this action to the San Bernardino County Superior Court pursuant to 28 U.S.C. § 1447.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court **GRANTS** Schiller's Motion, for the reasons explained below.

## I. BACKGROUND

On July 23, 2020, Schiller, individually and purportedly on behalf of all others similarly situated, filed his Complaint commencing this action in the Superior Court of the State of California for the County of San Bernardino.[3] Schiller asserts seven claims for relief in his Complaint: (1) Failure to Pay Minimum, Regular, and Overtime Wages (the "Unpaid Wage Claim"); (2) Failure to Provide Meal Periods or Compensation in Lieu Thereof (the "Meal Period Claim"); (3) Failure to Provide Rest Periods or Compensation in Lieu Thereof (the "Rest Period Claim"); (4) Failure to Provide Accurate Itemized Wage Statements (the "Wage Statement Claim"); (5) Failure to Timely Pay Wages Due Upon Separation of Employment (the "Waiting Time Penalty Claim"); (6) Failure to Reimburse Business-Related Expenses (the "Business Expense Claim"); and (7) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*[4]

---

[1] Pl.'s Mot. to Remand to State Court [ECF No. 11] (the "Motion").

[2] The Court considered the following papers in connection with the Motion: (1) Defs.' Notice of Removal of Civil Action (including its attachments) (the "Removal Notice") [ECF No. 1]; (2) Pl.'s Compl. (the "Complaint") [ECF No. 1-3]; (3) the Motion (including its attachments); (4) Defs.' Opp'n to the Motion (including its attachments) (the "Opposition") [ECF No. 12]; and (5) Pl.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 13].

[3] *See generally* Complaint.

[4] *See generally id.*

Defendant Ashley Distribution Services, Ltd. filed its Answer to Schiller's Complaint in the Superior Court on December 28, 2020.[5] On December 29, 2020, Ashley removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[6]

On February 1, 2021, Schiller filed the instant Motion to Remand. Ashley timely filed its Opposition on February 19, 2021, and Schiller timely filed his Reply on February 26, 2021.

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction. Accordingly, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In every federal case, the basis for federal jurisdiction must appear affirmatively from the record. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted). Where Congress has acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction. *See id.* Unless otherwise expressly provided by Congress, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a); *see Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013) (internal quotation marks omitted).

---

[5]  *See generally* Defs.' Answer (the "Answer") [ECF No. 1-1, Ex. G].
[6]  *See* Removal Notice.

To remove an action to federal court under 28 U.S.C. § 1441(a), the removing defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts." *Syngenta*, 537 U.S. at 33. In other words, the removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

### III. DISCUSSION

Ashley removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the CAFA. Therefore, Ashley bears the burden of establishing that this Court has original subject matter jurisdiction over the action.

#### A. Legal Standard Under the CAFA

Under the CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity. 28 U.S.C. § 1332(d)(2). To remove a case to federal court under the CAFA, the defendant must demonstrate that the amount in controversy exceeds $5 million, exclusive of interest and costs. *Id.* The general rule is that a removing defendant's well-pleaded amount in controversy allegations "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d

1193, 1197 (9th Cir. 2015) (in evaluating the amount in controversy, the court first looks to the complaint).

However, where, as here, the plaintiff challenges the removing defendant's jurisdictional allegation, under 28 U.S.C. § 1446(c)(2)(B), "removal . . . is proper on the basis of an amount in controversy asserted" by the defendant only "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88. "In such a case, both sides submit proof and the court decides . . . whether the amount-in-controversy requirement has been satisfied." *Id.* The preponderance of the evidence standard means that the "defendant must provide evidence establishing that it is *'more likely than not'* that the amount in controversy" meets or exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added). The defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Gaus*, 980 F.2d at 567. In addition to the contents of the notice of removal, the Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Ibarra*, 775 F.3d at 1197; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). There is no presumption against removal jurisdiction in CAFA cases. *Dart Cherokee*, 574 U.S. at 89.

Here, as a threshold matter, the parties agree that there is minimal diversity, as required by the CAFA.[7] *See* 28 U.S.C. § 1332(d)(2). The only jurisdictional dispute is with respect to the amount in controversy requirement under the CAFA.

---

[7] *See* Removal Notice ¶¶ 19–22; Motion 2:6 n.2.

B. **Amount in Controversy**

Schiller challenges Ashley's invocation of CAFA jurisdiction on the ground that Ashley has not satisfied the amount in controversy requirement.[8] In addition to the calculation of the amount in controversy in its Notice of Removal, Ashley also provides a "conservative" and a "most conservative" model of the amounts in controversy.[9]

In calculating the amounts in controversy, Ashley defined the Class Period as August 24, 2018, to the present.[10] Based upon Ashley's payroll data and timekeeping records, at the time of removal, there were approximately 343 non-exempt employees in California who worked more than 21,409 workweeks during the Class Period.[11] Based upon updated data for the period between August 24, 2018, through February 21, 2021, there were approximately 363 non-exempt employees in California who worked 22,576 workweeks.[12] Ashley's original calculation of the amount in controversy utilized a "conservative hourly pay rate based on the current minimum wage of $13.00 per hour . . . ."[13] In calculating the updated "Conservative" and "Most Conservative" models of the amount in controversy, Ashley utilized the average rate of pay for all employees, which it calculated as $19.44 per hour.[14]

---

[8] *See generally* Motion.

[9] *See* Opposition 19:3–23 (the "more conservative" and "most conservative" amounts in controversy include an adjustment in the average hourly range from $13.00 per hour (minimum wage) in the original calculation to $19.44 per hour which is the average hourly rate for all employees); *see also* Suppl. Decl. of Devin Rauchwerger in Supp. of the Removal Notice (the "Suppl. Rauchwerger Decl.") [ECF No. 12-3] ¶¶ 4 & 5.

[10] *See* Removal Notice ¶ 31; *see also* Opposition 15:16–16:16. For the purpose of the instant Motion, Schiller accepts as true that the Class Period begins on August 24, 2018. Motion 3:25 n.3.

[11] *See* Removal Notice ¶ 32; Decl. of Devin Rauchwerger in Supp. of the Removal Notice (the "Rauchwerger Decl.") [ECF No. 1-1] ¶¶ 15 & 16).

[12] *See* Suppl. Rauchwerger Decl. ¶ 4; Opposition 15:16–16:16.

[13] Removal Notice ¶ 32 (citing Rauchwerger Decl. ¶ 16).

[14] *See* Suppl. Rauchwerger Decl. ¶ 5; Opposition 16:9–15.

According to each of Ashley's models, the potential amounts in controversy are as follows:[15]

| Claim for Relief (Original Model) | Amount in Controversy |
|---|---|
| Unpaid Wage Claim (assuming 3 hours/week) | $1,252,427[16] |
| Meal Period Claim (assuming 5 violations/week) | $1,391,585[17] |
| Rest Period Claim (assuming 5 violations/week) | $1,391,585[18] |
| Wage Statement Claim | $898,050[19] |
| Waiting Time Penalty Claim | $443,040[20] |
| Business Expense Claim ($7.50 rate) | $160,567[21] |
| **TOTAL** | **$5,537,254** |

| Claim for Relief (Conservative Model) | Amount in Controversy |
|---|---|
| Unpaid Wage Claim (assuming 2 hours/week) | $1,316,632[22] |
| Meal Period Claim (assuming 3 violations/week) | $1,316,632[23] |

---

[15] In an abundance of caution, Ashley also includes a calculation of the amount in controversy with respect to Schiller's claims for attorneys' fees. The Court will address the amount in controversy for Schiller's claims for attorneys' fees after addressing each of the individual claims.

[16] Calculated as $19.50 [overtime rate] x 3 hours per week x 21,409 workweeks. Rauchwerger Decl. ¶ 17.

[17] Calculated as $13.00 [one hour of pay] x 5 days per week x 21,409 workweeks. Rauchwerger Decl. ¶ 18.

[18] Calculated as $13.00 [one hour of pay] x 5 days per week x 21,409 workweeks. Rauchwerger Decl. ¶ 19.

[19] *See* Removal Notice ¶¶ 39 & 40 (citing Rauchwerger Decl. ¶ 20).

[20] Calculated as $13.00 x 8 hours per day x 30 days x 142 class members. Rauchwerger Decl. ¶ 21.

[21] Calculated as 21,409 pay periods x $7.50 per pay period. *Id.* at ¶ 22.

[22] Calculated as $29.16 [overtime rate] x 2 hours per week x 22,576 workweeks. Suppl. Rauchwerger Decl. ¶ 6.

[23] Calculated as $19.44 [one hour of pay] x 3 days per week x 22,576 workweeks. *Id.* at ¶ 8.

| | |
|---|---|
| Rest Period Claim (assuming 3 violations/ week) | $1,316, 632[24] |
| Wage Statement Claim | $1,088,350[25] |
| Waiting Time Penalty Claim | $681,177[26] |
| Business Expense Claim ($5.00 rate) | $112,880[27] |
| **TOTAL** | **$5,832,303** |

| Claim for Relief (Most Conservative Model) | Amount in Controversy |
|---|---|
| Unpaid Wage Claim (assuming 1.5 hours/week) | $987,474[28] |
| Meal Period Claim (assuming 2 violations/ week) | $877,754[29] |
| Rest Period Claim (assuming 3 violations/ week) | $1,316, 632[30] |
| Wage Statement Claim | $1,088,350[31] |
| Waiting Time Penalty Claim | $681,177[32] |
| Business Expense Claim ($5.00 rate) | $112,880[33] |
| **TOTAL** | **$5,064,267** |

---

[24] Calculated as $19.44 [one hour of pay] x 3 days per week x 22,576 workweeks. *Id.* at ¶ 10.
[25] *Id.* at ¶ 11.
[26] Calculated as $19.44 x 8 hours per day x 30 days x 146 class members. *Id.* at ¶ 12.
[27] Calculated as 22,576 pay periods x $5.00 per pay period. *Id.* at ¶ 13.
[28] Calculated as $29.16 [overtime rate] x 1.5 hours per week x 22,576 workweeks. *Id.* at ¶ 7.
[29] Calculated as $19.44 [one hour of pay] x 2 days per week x 22,576 workweeks. *Id.* at ¶ 9.
[30] Calculated as $19.44 [one hour of pay] x 3 days per week x 22,576 workweeks. *See id.* at ¶ 10.
[31] *Id.* at ¶ 11.
[32] Calculated as $19.44 x 8 hours per day x 30 days x 146 class members. *Id.* at ¶ 12.
[33] Calculated as 22,576 pay periods x $5.00 per pay period. *Id.* at ¶ 13.

Schiller contends that Ashley has not shown, by a preponderance of evidence, that the amount in controversy meets or exceeds the $5 million threshold. In this regard, Schiller objects to Ashley's assumptions regarding violation rates for the Unpaid Wages claim and the Meal and Rest Period Claim and to the reimbursement rate that Ashley utilized to calculate the amount in controversy for the Unreimbursed Business Expense Claim.[34] Schiller does not, however, challenge Ashley's calculation of the amount in controversy with respect to the other claims.

### 1. The Uncontested Claims

Schiller does not contest Ashley's calculation of the amount in controversy for the Wage Statement Claim or the Waiting Time Penalty Claim.[35] Accordingly, the Court finds that Ashley's assumptions in calculating the amount in controversy for these claims are reasonable. For the purpose of this analysis, the Court will adopt the most up to date amount in controversy calculation for each of these claims, proffered by Ashley in its Opposition:[36] the amount in controversy for the Wage Statement Claim is $1,088,350;[37] and the amount in controversy for the Waiting Time Penalty Claim is $681,177.[38]

### 2. The Unpaid Wage Claim

In support of his Unpaid Wage Claim, Schiller alleges, in pertinent part, that Ashley failed to pay "minimum, regular, and overtime wages for all hours worked in excess of 8 hours per day and/or 40 hours per week."[39] Schiller

---

[34] *See* Motion at 4:9–8:8 & 9:4–23; Reply 2:22–6:15.
[35] *See* Motion 8:9–9:3.
[36] The Court adopts the updated calculations because Schiller did not contest the reasonableness of Ashley's original assumptions. The updated figures are based upon the same uncontested assumptions, with updated data inputs. *See* Opposition 18:1–20.
[37] *Id.* at 19:9.
[38] *Id.* at 19:10.
[39] Complaint ¶ 51.

specifically alleges that, among other things, he and the putative class members (the "PCMs") were not paid for their time spent undergoing daily medical checks or their time spent receiving and responding to work related phone calls and text messages while off-the-clock.[40] Schiller also alleges that Ashley failed to incorporate non-discretionary bonuses for the purpose of calculating overtime pay and that Schiller and other PCMs were "sometimes required" to remain under Ashley's control during meal and rest periods without being paid any compensation.[41] Elsewhere in his Complaint, Schiller alleges that he and the PCMs "regularly worked shifts of more than 10 hours per day."[42]

Based upon these allegations, in its original calculation of the amount in controversy for the Unpaid Wage Claim, Ashley assumed that each PCM worked three unpaid overtime hours every week. In its Conservative model, Ashley assumed that each PCM worked two hours of unpaid overtime, and in its Most Conservative model, Ashley assumed that each PCM worked 1.5 hours of unpaid overtime.[43] Schiller contends that Ashley does not adequately explain the basis for its assumptions.[44] Among other deficiencies, Schiller argues that Ashley does not provide any data about the PCMs' average hours worked per day or any data regarding the average days worked per week.[45]

The Court agrees with Schiller that without information such as the PCMs' average hours worked per day and the average days worked per week, there is no evidentiary support for Ashley's assumptions regarding the Unpaid Wage Claim. This Court addressed a similar issue in *Vasquez v. RSI Home*

---

[40] *Id.*
[41] *Id.*
[42] *Id.* at ¶ 61.
[43] *See* Opposition 16:17–17:9.
[44] *See* Motion 4:9–7:3; Reply 2:22–4:24.
[45] *See* Motion 5:21–6:16; Reply 2:22–4:24.

*Products, Inc.*, 2020 WL 6778772 (C.D. Cal. Nov. 12, 2020). In that case, the defendant's calculation of the amount in controversy for the unpaid wage claim was based upon an assumption of 30 minutes of unpaid overtime per workweek (six minutes of unpaid overtime per day). *See id.* at *6–7. That assumption was based, in part, upon evidence that the class members worked an average of 8.61 hours per workday. *See id.* at *6. Based upon that evidence, and in conjunction with the universal violation rate alleged by the plaintiff, this Court determined that the assumption of 30 minutes of unpaid overtime per week was reasonable. *See id.* at *6–7.

In contrast, here, Ashley did not calculate the average number of hours worked per workweek or the average number of days worked per week.[46] The sole basis for Ashley's assumption is Schiller's allegation that Ashley failed to pay wages for "all hours" worked in eight hours per day or 40 hours per week and the allegation that the PCMs "regularly" worked shifts longer than 10 hours per day.[47] In the absence of additional data, however, the Court cannot find that Ashley's assumptions are reasonable—even its more conservative assumptions. Assuming for the purpose of this analysis that 30 minutes of unpaid overtime per week would be reasonable in this case, *see id.* at *6–7, even though there is no evidentiary support for any such conclusion,[48] the amount in controversy for the Unpaid Wage Claim would be $329,158.08.[49]

---

[46] *See* Removal Notice ¶ 34 (assuming three hours of unpaid overtime based upon employment data that 343 PCMs worked 21,409 workweeks during the Class Period).

[47] *See* Opposition 8:6–11.

[48] Other district courts have declined to credit calculations of the amount in controversy where those calculations were based upon unreasonable assumptions. *See Allen v. Utiliquest, LLC*, 2013 WL 4033673, at *11–12 (N.D. Cal. July 26, 2013); *Martinez v. Morgan Stanley*, 2010 WL 3123175, at *5 (S.D. Cal. Aug. 9, 2010).

[49] Calculated as $29.16 [$19.44 x 1.5 (overtime rate)] x 0.5 hours per week x 22,576 workweeks.

### 3. The Meal and Rest Period Claims

The assumptions underlying Ashley's calculation of the amount in controversy for the Meal and Rest Period Claims similarly lack evidentiary support. As a general matter, Schiller alleges that he and the PCMs were "not regularly provided duty-free 30-minute meal periods for shift of five hours or more."[50] In support of his Meal Period Claim specifically, Schiller alleges that he and the PCMs were "not provided with legally compliant, off-duty meal periods,"[51] including the legally required 30 minute first meal period after five hours of work,[52] and the required 30 minute second meal period for shifts longer than 10 hours.[53] Regarding the latter, Schiller avers that he and the PCMs "regularly worked shifts of more than 10 hours per day" without being provided the second meal period.[54] In support of his Rest Period Claim, Schiller alleges that he and the PCMs were not provided with compliant duty-free rest periods of at least 10 minutes for every four hours worked[55] and that PCMs were often "unable to take duty-free rest periods due to the demands of their job."[56] Schiller additionally alleges that Ashley failed to provide a third 10 minute rest period for shifts of 10 hours or more and failed to pay the PCMs one hour of pay at the regular rate of pay for days on which the third rest period was not provided.[57]

Based upon these allegations, in its original amount in controversy calculation, Ashley assumes five meal and five rest period violations per week; in

---

[50] Complaint ¶ 14.
[51] *Id.* at ¶ 61.
[52] *See id.* at ¶¶ 14 & 62.
[53] *See id.* at ¶ 61.
[54] *Id.*
[55] *See id.* at ¶¶ 72 & 73.
[56] *Id.* at ¶ 72.
[57] *Id.* at ¶ 74.

other words, Ashley's original calculation assumes a 100% violation rate during each workweek.[58] In its Conservative Model, Ashley assumes three meal and three rest per period violations per workweek,[59] and in its Most Conservative Model, Ashley assumes two meal period violations[60] and three rest period violations per week.[61]

        Ashley does not, however, provide any evidentiary support for its assumptions, such as the average number of hours worked per week or the average days worked per week.  Instead, Ashley's assumptions are based solely upon the breadth of Schiller's allegations regarding the meal and rest period violations.[62] Although Schiller's general allegations regarding the first meal period, which contain the conditional language of "not regularly," seem to contradict the later unconditioned allegations in support of the Meal Period Claim, the Court cannot simply ignore the conditional allegations, because those allegations still inform the analysis of whether Ashley's assumptions are reasonable.  *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962, 965 (9th Cir. 2020) ("plausible [jurisdictional] allegations" necessarily rely on "reasonable assumptions," based upon the well-pleaded allegations of the complaint).  With that in mind, Schiller's allegations regarding the first meal period can fairly be read as alleging a conditional violation rate.[63] Schiller's allegations with respect to the second rest period are similarly conditional to the extent that the PCMs "regularly," but not always, worked shifts of 10 hours our more without being provided a second meal period.[64] In this context, the term "regularly" means

---

[58]   *See* Removal Notice ¶¶ 35 & 36; Rauchwerger Decl. ¶ 18.
[59]   Opposition 17:11–14 & 17:22–24.
[60]   *Id.* at 17:16–19.
[61]   *Id.* at 17:22–24; *see also id.* at 19:18.
[62]   *See* Removal Notice ¶¶ 35 & 36.
[63]   *See* Complaint ¶¶ 14, 61, & 62.
[64]   *See id.* at ¶ 63.

"at the same time each day, week, month, etc. and usually fairly often." Schiller's allegations with respect to the Rest Period Claim do not contain any qualifying language;[65] therefore, those allegations can fairly be read as alleging a universal violation rate.

In *Vasquez*, the plaintiff alleged a universal violation rate with respect to each of his claims, and this Court determined that the assumption of one meal period and one rest period violation per week was reasonable. *See Vasquez*, 2020 WL 6778772, at *7–8. District courts addressing similar allegations of a universal violation rate have likewise held that an assumption of one meal and rest period violation per week is reasonable. *See, e.g.*, *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *2–3 (C.D. Cal. Sept. 12, 2019) (the defendant's assumption of one meal and rest period violation per week was reasonable); *Salazar v. PODS Enters, LLC*, 2019 WL 2023726, at *2–3 (C.D. Cal. May 8, 2019) (20% violation rate was reasonable where plaintiff alleged that he and the PCMs were only "occasionally authorized" to take their meal and rest breaks). Reinforcing this point, other district courts have rejected assumptions of, for example, five violations per week based solely upon the wording of the complaint, reasoning that it is equally plausible that employees "regularly" experienced only one violation per week. *See Barbosa v. Transp. Drivers, Inc.*, No. CV 15-08705 RGK (KS), 2016 U.S. Dist. LEXIS 61936, at *5–6 (C.D. Cal. May 9, 2016) (rejecting defendant's assumption of five meal and rest period violations per week where the plaintiff alleged that the PCMs were "regularly" and "consistently" deprived of breaks, explaining that the defendant failed "to prove by a preponderance of the evidence why 'regular' or 'consistent' violations" supported the defendant's assumptions); *Moreno v.*

---

[65] *See id.* at ¶¶ 72 & 73.

*Ignite Rest. Grp.*, 2014 WL 1154063, at *11–12 (N.D. Cal. Mar. 20, 2014) (to similar effect).

Therefore, here, in the absence of additional evidentiary support—such as the average number of hours and days worked per workweek, which would at least provide a baseline for assessing how many meal and rest periods employees were entitled to on average—the Court finds that Ashley's assumptions are unreasonable. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 771–72 (11th Cir. 2010) ("when a removing defendant makes specific factual allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations[,][t]hat kind of reasoning is not akin to conjecture, speculation, or star gazing"), *cited with approval in Ibarra*, 775 F.3d at 1197. Instead, as in *Vasquez*, the Court finds that an assumption of one meal period violation and one rest period violation per week would be reasonable in view of Schiller's allegations. With that assumption in place, the total amount in controversy for Schiller's Meal and Rest Period Claims is $877,754.88.[66]

### 4. The Business Expense Claim and Attorneys' Fees Claims

With respect to Ashley's calculation of the amount in controversy for Shiller's Business Expense Claim, Schiller objects to Ashley's assumption that each PCM should have received a stipend of $7.50 (or $30 per month) for business expenses.[67] The Court declines to make any finding with respect to this assumption because, as explained below, even if Ashley's assumption is credited as reasonable and the amount is calculated based upon the updated employment

---

[66] Meal Period Claim: calculated as $19.44 [one hour of pay] x 1 day per week x 22,576 workweeks = $438,877.44); Rest Period Claim ($19.44 [one hour of pay] x 1 day per week x 22,576 workweeks.

[67] *See* Motion 9:4–23.

data,[68] Ashley still cannot meet the amount in controversy requirement under the CAFA. Similarly, in view of the Court's findings with respect to the amount in controversy for the underlying claims, even if the Court factors in attorneys' fees (which are included in the calculation below), Ashley still cannot meet the amount in controversy requirement.

### 5. Final Calculation of the Amount in Controversy

In view of the foregoing, the Court calculates the total amount in controversy as follows:

| Claim for Relief | Amount in Controversy |
| --- | --- |
| Unpaid Wage Claim (assuming 0.5 hours/week) | $329,158.08[69] |
| Meal Period Claim (assuming 1 violation/week) | $438,877.44[70] |
| Rest Period Claim (assuming 1 violation/week) | $438,877.44[71] |
| Wage Statement Claim | $1,088,350[72] |
| Waiting Time Penalty Claim | $681,177[73] |
| Business Expense Claim ($7.50 rate) | $169,320[74] |
| **TOTAL** | **$3,145,759.96** |
| Attorneys' Fees Claims | $825,000[75] |

---

[68] Calculated as 22,576 workweeks x $7.50 expense stipend = $169,320). *See* Rauchwerger Decl. ¶ 22; Suppl. Rauchwerger Decl. ¶ 13.

[69] Calculated as $29.16 [$19.44 x 1.5 (overtime rate)] x 0.5 hours per week x 22,576 workweeks.

[70] Calculated as $19.44 [one hour of pay] x 1 day per week x 22,576 workweeks.

[71] Calculated as $19.44 [one hour of pay] x 1 day per week x 22,576 workweeks.

[72] Suppl. Rauchwerger Decl. ¶ 11.

[73] *Id.* at ¶ 12.

[74] Calculated as 22,576 workweeks x $7.50 expense stipend = $169,320. *See* Rauchwerger Decl. ¶ 22; Suppl. Rauchwerger Decl. ¶ 13.

[75] Calculated as 1,500 hours x $550 hourly rate. *See* Opposition 21:20–22:8. Alternatively, using the percentage-of-the-fund method with ***a generous rate of 25%***, the calculation of attorneys' fees would be: $3,145,759.96 x 0.25 = $786,439.75.

| | |
|---|---|
| **TOTAL (including attorneys' fees)** | **$3,970,759.96** |

Therefore, the Court concludes that Ashley has not shown by a preponderance of the evidence that the amount in controversy meets or exceeds the $5 million threshold under the CAFA.

### IV.  CONCLUSION

Based on the foregoing, Plaintiff Francisco Schiller's instant Motion to Remand is **GRANTED** in its entirety.  This action is **REMANDED** to the San Bernardino County Superior Court.

**IT IS SO ORDERED.**

Dated:  April 6, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE